# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| JOHN PATRICK SCHRECKENGAST, and ANDREA SCHRECKENGAST ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | CV416-038 |
| ) | |
| CHARLES S. CAROLLO, individually, and LANDSTAR INWAY, INC., ) ) ) | |
| Defendants. ) | |

# **ORDER**

Before the Court in this in this auto wreck, personal-injury case are plaintiffs' motions for clarification and reconsideration, plus defendants' objections to plaintiffs' trial exhibits and deposition designations.[1] Docs. 84, 94, 110, 111. Defendants oppose both of plaintiffs' motions. Docs. 118, 119. The Court **SUSTAINS** as unopposed the portions of the objections which have been conceded, and **DENIES** as moot those objections which have since been withdrawn.[2]

---

[1] Although the parties filed their objections before the Court issued its previous order on the parties' motions *in limine*, doc. 100, due to clerical oversight, the objections were not referred to the undersigned. They are, therefore, resolved below.

[2] Plaintiffs have conceded several of defendants' objections. *See* doc. 87 at 22-23; *see also* doc. 95 at 12 (stating "[n]o objection" to withdrawal of exhibits). They have withdrawn Exhibits Nos. 40, 41, 42, 43. Doc. 87 at 22-23. Defendants have

## I. MOTION FOR CLARIFICATION

Plaintiffs want to bifurcate the trial "to avoid problems with the collateral source rule, while still protecting [Cannon Cochran Management Services, Inc.'s] interests as intervenor." Doc. 111 at 2. But the plaintiffs, defendants complain, have yet to accept the Court's invitation to confer and attempt to find a mutually agreeable way to address CCMS's presence at trial. Doc. 119 at 6. CCMS, for its part, states that it does not oppose bifurcation, but disputes plaintiffs' contention that Georgia law governs based on its assertion of a settlement agreement. Doc. 120.

Plaintiffs' bifurcation request is untimely. They have never objected to CCMS's intervention in this case, and their *in limine* motion raised no objection. *See* doc. 119 at 3 (noting "Plaintiffs have not objected to CCMS' intervention into this litigation."); *see generally* doc. 111. For that matter, the Court (at the pretrial conference and after it granted CCMS's intervention motion) advised the parties that there is "no cause to bifurcate here."[3] Doc. 105 at 23. No one objected at that time,

---

withdrawn their objections to Exhibits 5 and 8. *See* doc. 95 at 3-4.

[3] The parties' proposed pretrial order is ambiguous as to the request for bifurcation.

and the Court sees no cause to revisit the issue. Plaintiffs' apparent settlement with CCMS, meanwhile, only further supports the conclusion that its participation in the trial will be inconsequential. *See* doc. 120.

As stated in the Court's previous Order, the parties remain "free to confer and stipulate to a mutually satisfactory way to acknowledge CCMS at trial, though it may not actually appear if its only purpose is to recover from any plaintiffs' judgment." Doc. 100 at 4. The Court's prior ruling, granting plaintiff's motion *in limine* excluding collateral source evidence subject to requests to admit particular evidence made outside the presence of the jury, stands. The Court again encourages the parties to confer -- both about the possible presence of CCMS at trial and about CCMS's requested stipulation concerning the amount of its lien.[4] Doc. 120 at 4.

---

*See* doc. 68 at 36. However, defendants contend that the apparent ambiguity is merely the result of a typographical error and that the parties "had no intent to bifurcate the trial." Doc. 118 at 10 n. 3. Plaintiffs' ambiguous reference to bifurcation also appears in their response to defendants' motion *in limine*. *See* doc. 89 at 12 (conditionally contending relevance of Defendant Landstar's financial status "[t]o the extent there is bifurcation of liability and compensatory phases . . .").

[4] CCMS's response to plaintiff's motion for clarification "requests this Court to hold that South Carolina's workers' compensation statutes apply to CCMS's subrogation lien at issue in this action." Doc. 120 at 4. However, the record before the Court is not sufficiently established to support such a holding. CCMS contends that plaintiffs are judicially and equitably estopped from contending that Georgia law applies, based on a purported agreement to settle the claim under South Carolina's workers' compensation statute. Doc. 120 at 2-4. Yet, they have failed to introduce any evidence of such an agreement. *Id.* at 1 (asserting agreement only "upon information

Absent such agreement, determination of the admissibility of any particular collateral source evidence is **DEFERRED** to the district judge.

## II. MOTION FOR RECONSIDERATION

### A. Negligent Hiring Evidence

The Court previously deemed inadmissible certain evidence that plaintiffs contend is relevant to their claim for negligent hiring, entrustment, supervision, training, and retention (for brevity, the "negligent hiring claim"). *See* doc. 100. Plaintiffs move to reconsider. Doc. 110. The difficulty the Court faces in resolving this issue is that plaintiffs' claim appears deficient as a matter of law, yet defendants have not sought summary disposition. Given that atypical status, the Court balanced the probative value of the evidence against the risk of prejudice and determined that it should be excluded. *See* doc. 100 at 11-12.

Under Georgia law, "subjecting a defendant to vicarious liability through *respondeat superior* precludes a redundant claim of negligent hiring or retention against the same defendant." *Coleman v. Avery*, 2015 WL 12851557 at * 6 (N.D. Ga. May 7, 2015). "In cases alleging both respondeat superior and negligent hiring, supervision, retention, training

---

and belief"). Accordingly, CCMS's request is **DENIED**.

and entrustment against an employer for the acts of its driver where no punitive damages are sought, the Georgia Court of Appeals has stated that a defendant employer's admission of liability under respondeat superior establishes the liability link necessary to proceed against the employer on its employee's negligence. [Cit.]. This is so because of the countervailing problems inherent in protecting the employee from prejudicial evidence of his prior driving record and general character for recklessness in driving while admitting the proof necessary for the negligent entrustment case to proceed." *Homestate County Mut. Ins. Co. v. Logicorp Enters., LLC*, 2014 WL 12647766 at * 4 (N.D. Ga. July 22, 2014) (cites omitted).

Plaintiffs argue that this principle no longer applies, given Georgia's adoption of an apportionment-of-fault statute, replacing the old regime of joint and several liability. *See* doc. 132. That argument is creative, and in fact is supported by *Little v. McClure*, 2014 WL 4276118 at * 2-3 (M.D. Ga. Aug. 29, 2014). But federal courts have continued to follow the established Georgia rule. *See, e.g., Downer v. Boyer*, 2017 WL 1093167 at * 2 (N.D. Ga. Mar. 23, 2017) ("Under Georgia law, respondeat superior and negligent hiring, training, and supervision are mutually exclusive

theories of liability."); *Coleman,* 2015 WL 12851557 at * 6.  The Court could not find, and plaintiffs have not cited, any case since *Little* adopting its reasoning.  The Court is also not convinced that the Georgia Supreme Court's opinion in *Zaldivar v. Prickett*, 297 Ga. 589 (2015), extends as far as plaintiffs claim.[5]  Thus, the Court is not willing to buck the prevailing

---

[5] *Zaldivar* held that Georgia's apportionment statute allowed a defendant to argue that the plaintiff's employer was, under a theory of negligent entrustment, partly at fault for plaintiff's injuries.  *See* 297 Ga. at 604.  However, the Court still rejects the inference that *Zaldivar* always authorizes plaintiffs' to advance a negligent hiring claim when *respondeat superior* is conceded.

To be sure, there is reason to think that *Zaldivar* affects the relationship between negligent hiring and *respondeat superior* liability.  *See* Michael David Alfano, Jr., *Employer Escape Hatch Closed in Georgia: How the Interpretation of Georgia's Apportionment Statute in* Zaldivar *Prohibits Employers from Using* Respondeat Superior *to Eschew Direct Negligence Claims*, 50 GA. L. REV. 1233 (2016).  To that end, the apportionment statute requires the fact finder "to divide responsibility for an injury among all of those who 'contributed to' it -- parties and nonparties alike -- according to their respective shares of the combined 'fault' that produced the injury." *Zaldivar*, 297 Ga. at 690.  Thus, the determination that additional *parties* are potential contributors to an injury is vitally important, because the apportionment statute requires the fact finder to assign them some portion of responsibility, even if they are protected against liability by an immunity or affirmative defense.  *Id.* at 697.

But that reasoning does not imply that a party must be allowed to pursue redundant theories of responsibility against any given party.  The assignment of fault to a particular responsible party is not, necessarily, a simple matter of calculating the total number of negligent acts which contributed to the injury, attributing those acts to responsible parties, and assigning fault by percentages.  After all, a party who is negligent in three different ways is not necessarily more at fault for an injury than a party that was negligent in only one way.  It seems perfectly consistent with the apportionment statute's purpose (and command) that a fact finder could easily, upon assessing the ways in which negligent conduct flowed and converged upon the plaintiff-victim, assign greater fault to the single-tortfeasor than to the multiple-tortfeasor, or vice-versa.  The evidentiary presentation (how a *Palsgrafian* sequence unfolded and impacted the victim) drives the result.  Simply put, the

trend and find that plaintiffs' negligent hiring claim is not surplus, given Landstar's concession of *respondeat superior*.

Plaintiffs do not dispute the evidence's prejudicial character. Doc. 110 at 3-4. In fact, plaintiffs suggest bifurcating the liability phase of this

---

number of torfeasors, and the number of torts they commit, must be analyzed by the fact finder during deliberations.

If *Zaldivar* does not imply what plaintiffs contend that it does, there is still the question of whether this Court should follow *Little*. After all, the mere fact that numerous courts have decided the issue one way does not necessarily mean they were right. However, the reasoning in *Little* does not assuage the Court's concern that there is an important distinction between who is potentially subject to apportionment of fault and manners of negligence. *Little* reasoned that "a defendant is only liable for the percentage of a plaintiff's damages attributable to his apportioned fault, so the employee's negligence (for which the employer would be liable by virtue of *respondeat superior*) would be apportioned separately from the employer's independent negligence." *Little*, 2014 WL 4266118 at * 3. But that reasoning seems to ignore the fact that there may be only one injury (and thus one total amount of damage) on which to affix liability. Apportioning responsibility among tortfeasors *separately* based on the torts they commit ignores the fact that the plaintiff's recovery, whether there is one tort or a thousand, is limited by his injury.

Illustration of the point, given the facts of the present case, make the redundancy of the additional claim clear. Carollo was allegedly negligent. If plaintiffs prevail, he will be responsible for some portion of the proven damages. Assuming that plaintiffs proceed on their negligent hiring claim and prevail, Carollo's employer (defendant Landstar) would be independently responsible for some portion of those same proven damages. Schreckengast was, after all, only injured once, albeit seriously and with various consequences (*i.e.* the loss of consortium his wife suffered). However, the outcome doesn't change if there is no independent basis for Landstar's liability. In that case, Carollo is the sole liable party, but, under *respondeat superior*, his *entire* liability is attributable to his employer, Landstar. *See, e.g. Little*, 2014 WL 4276118 at *3 (recognizing that employer is liable for all of employee's negligence under *respondeat superior*). Either way, any liability attributable to Carollo or Landstar is transformed into Landstar's liability; regardless of whether that liability is the result of primary or imputed fault. That constitutes the very essence of redundancy. Thus, when the potential prejudice of the negligent-hiring evidence is recognized, exclusion of that evidence is warranted.

trial (despite, as discussed above, their concession at the pretrial conference that bifurcation was not appropriate) and claim that "[t]he risk of prejudice of not allowing plaintiff to present any evidence on these pending claims is paramount." *Id.* at 6. They do not explain, however, *how* they would be prejudiced by not being allowed to offer proof of a redundant claim. Plaintiffs' argument that Fed. R. Evid. 403 rarely provides a reason to exclude otherwise relevant evidence, *id.* at 4-6, depends on Fed. R. Evid. 401's definition of "relevance" as conditioned on whether "the fact [the evidence would tend to prove] is of consequence in determining the action." Fed. R. Evid. 401(b). Since plaintiffs' negligent hiring claim is redundant, although it remains pending,[6] the probative value of any evidence supporting it must be vanishingly small. Thus, the unrebutted risk of prejudice identified by defendants is sufficient to outweigh it. Their motion for reconsideration (doc. 110), therefore, is **DENIED in part**.

B. **Defendant Carollo's Traffic Ticket**

Plaintiffs also request that the Court reconsider its ruling on the

---

[6] The Court also notes that the parties' proposed pretrial order, which requires the "party bearing a burden of proof [to] list each and every act of negligence . . . relied upon," doc. 68 at 13, does *not* list negligent hiring as either an alleged act of negligence or imputable negligence, *id.* at 13-15.

8

admissibility of defendant Carollo's traffic ticket for following too closely, issued as a result of the wreck at issue in this case. Doc. 110 at 7-9. Generally, "[e]vidence of traffic citations is only admissible in a subsequent civil proceeding if the defendant voluntarily and knowingly entered a plea of guilty." *Rangel v. Anderson*, 2016 WL 6595600 at * 3 (S.D. Ga. Nov. 7, 2016) (internal quotes and cite omitted). But Carollo didn't plead guilty; he merely forfeited his bond. Doc. 110-1 at 2. Plaintiffs contend that bond forfeiture can be construed as an admission of guilt. *See* doc. 110 at 8 (citing O.C.G.A. § 40-13-58). Defendants oppose and cite defendant Carollo's deposition testimony to further support the conclusion that he did not knowingly plead guilty to the offense charged. Doc. 96 at 8-12.[7]

In their reconsideration motion plaintiffs present a new citation, *Highsmith v. Tractor Trailer Service,* where the Northern District of Georgia accepted a bond forfeiture as evidence of negligence *per se*. 2005 WL 6032882 at * 7 (N.D. Ga. Nov. 21, 2005). Based on *Highsmith*, the

---

[7] Defendants have not responded to plaintiffs' arguments in their motion for reconsideration on this issue. *See* doc. 118. Thus, they have not explained the effect of *Highsmith* on their contention that "[i]n the federal system, evidence of traffic citations is only admissible in a subsequent civil proceeding if the defendant voluntarily and knowingly entered a plea of guilty." Doc. 96 at 11 (citing, *inter alia*, *Rangel*, 2016 WL 6595600 at * 2-3).

Court concludes that Carollo's traffic ticket is admissible, though Carollo may, as plaintiffs concede, provide an explanation in his defense. *See* doc. 89 at 19 ("Plaintiffs recognize that Defendant Carollo can attempt to rebut the presumption of guilt by presenting evidence that he was not negligent despite the documented bond forfeiture, and/or evidence that the charge was reduced to "Too Fast for Conditions" based soeley on his testimony . . ., and the jury can choose to agree or not agree with his testimony."). The Court, therefore, **GRANTS in part** plaintiffs' motion for reconsideration, doc. 110, **VACATES in part** its prior Order, doc. 100, and replaces it with the above analysis.

### III. OBJECTIONS

Defendants have objected to several of plaintiffs' exhibits and deposition designations. Docs. 84 & 94. Plaintiffs oppose several of defendants' objections to their exhibits. *See* doc. 95. They have not, however, responded to defendants' objections to their deposition designations. Normally, a motion to which no response is filed is construed as unopposed. *See* S.D. Ga. L. Civ. R. 7.5. In this case, however, the substance of defendants' objections is linked to disputes that the parties have fully briefed. *See* doc. 94 (incorporating specific

arguments from defendants' motions *in limine*). Thus, the Court will construe the briefing to reflect that plaintiffs oppose defendants' objections on the same bases as stated in those briefs.

### A. Objections to Exhibits

**Exhibit 2:** Defendants have withdrawn their objection to the Georgia Traffic Crash Report to the extent that it reflects the reporting officer's personal observations. *See* doc. 95 at 1. Their remaining objection to the portion of the report reflecting Carollo's citation for following too closely is **DENIED** for the reasons explained in § II.B above. Their objection to the portions of the report that they contend are inadmissible opinion testimony is **DENIED** for the reasons explained in § II.D of the Court's prior Order. *See* doc. 100 at 10-11.

**Exhibit 11:** Defendants' objection to Exhibit 11 is **DENIED** for the reasons explained in § II.B above.

**Exhibits 23, 25, 26, 32, 34, 35, 36, 38, 39:** Defendants object to each of the listed exhibits on the grounds that they are irrelevant, given Defendant Landstar's admission of *respondeat superior* liability. *See* doc. 84 at 3-5 (incorporating the "[s]ame argument as set forth to Exhibit No. 23," as objection to each subsequent exhibit); *see also* doc. 87 at 20-22

(incorporating plaintiffs' "response to Objection No. 23 above as if fully set forth herein."). Plaintiffs advance a creative argument, based on Georgia's apportionment-of-fault statute, for the viability of their negligent hiring claim, including a list of alleged breaches of "the legal duties owed to Plaintiff, John Schreckengast." *See* doc. 87 at 10-20. First, the Court again notes that those alleged breaches are not included in the parties' proposed pretrial order. *See* doc. 68 at 13-15. And second, as reiterated above, negligent hiring claims are rendered redundant when a defendant concedes *respondeat superior* liability. Accordingly, Defendants' objections are **SUSTAINED**.

**Exhibit 49:** Exhibit 49 includes "[a]ll documents attached and referenced in the deposition of [defendant Landstar's corporate representative] Mike Cobb." *See* doc. 84 at 6. "Defendants object to this exhibit . . . [because] it is overly broad and catchall in nature." *Id*. They further object that the documents "are hearsay pursuant to Fed. R. Evid. 801(c)(1) and (2)[,]" and for the reasons they objected to Exhibit 23. *Id*. Plaintiffs respond by withdrawing one page (Bates 0055) of the included documents, the "Cancellation Request for Charles Carollo's services as a driver, and for his tractor." Doc. 87 at 24, 26. Defendants appear to

12

withdraw their objection to the notices of Cobb's deposition. *See* doc. 95 at 12 (incorporating defendants' response to Exhibit 23 "with the exception of Mike Cobb's Deposition notices."). Defendants' objection to the withdrawn page and the deposition notices are, therefore, **DENIED** as moot. The objections to the remaining exhibits, to the extent that they incorporate the arguments concerning Exhibit 23, are **SUSTAINED** for the reasons stated above.

**Exhibits 54-55**: Defendants object to the admission of accident reports (within an "accident file"), purportedly prepared by defendant Landstar, to the extent that they include 911 calls. Those calls, defendants contend, are "hearsay pursuant to Fed. R. Evid. 801(c)(1) and (2)." Doc. 84 at 7. Plaintiffs insist that the exhibits are business records excepted from the hearsay rule. Doc. 87 at 27-28. Further, any statements they contain made by defendant Carollo or corporate representatives of defendant Landstar do not constitute hearsay because they are the statements of an opposing party. *See id.* at 28-29 (citing Fed. R. Evid. 801(d)(2)).

Defendants respond that the reports cannot be admitted under the business-records exception because "Plaintiffs will be unable to show that

these accident reports are made in the regular course of business at Landstar, and Plaintiffs will be unable to call a witness to attest to the authenticity of the report." Plus, defendants further assert, the report's statements are themselves based on hearsay, "not from the firsthand knowledge of the preparer of the reports." Doc. 95 at 14.

Defendants original objection to "the admission or offering of the 911 call," can be **DENIED** as moot, given plaintiffs' clarification that the "accident report" and "accident file" are the documents attached to its response (*see* doc. 87 at 28-29; doc. 87-3), and they simply do not include any 911 call. The reports include descriptions of accidents other than the accident at issue, involving defendant Carollo, that plaintiffs contend are relevant to their negligent hiring claim. *See* doc. 87 at 27 (stating "the prior accidents are relevant to the lack of training and supervision provided by Defendant Landstar"); doc. 87-3 at 4-6 (recoding accident in Baton Rouge, Louisiana from 2014). For the reasons explained in § II.A above (negligent hiring claim is neutralized by *respondeat superior* admission), defendants' objection to the other, prior accidents reports are **SUSTAINED**.

Thus, the only question remaining is whether the record of the

accident at issue is admissible. Based on the contents of the parties' briefs, the Court cannot find that the reports are admissible under the business-records exception. Plaintiffs' brief does not cite to any other "business records" evidence in support of its contention. *See* doc. 87 at 30. It is simply unclear from the face of the reports who prepared them. *See* doc. 87-3 at 1-3. Defendants, for that matter, appear to deny that the reports were prepared by Landstar employees -- they implicitly deny, at least, that the reports were prepared in the ordinary course of Landstar's business. *See* doc. 95 at 14. Without a sufficient foundation to admit the reports under the asserted exception, the Court must **SUSTAIN** defendants' objection.

### B. Objections to Deposition Designations

**Deposition of Corin Clark:** Defendants object to the designation of Page 49, line 22 to Page 50, line 10 of Clark's deposition because they contend "it improperly injects collateral source [sic] into the case." Doc. 94 at 1. In support of their objection, Defendants incorporate the argument advanced in their Motion *in limine*, Section 3(C). *Id.* at 2. That argument was expressly conceded by plaintiffs. *See* doc. 89 at 11. Since plaintiffs have not responded to defendants'

deposition designation objection, and did not oppose the incorporated argument, their objection is **GRANTED** as unopposed.

**Deposition of Sgt. Christopher Rodewolt:** Defendants object to several portions of Sgt. Christopher Rodewolt's deposition based on their *in limine* contention that his statements of opinion are inadmissible. *See* doc. 94 at 2 (referring to argument "more fully set out" in the motion *in limine*). That objection is **DENIED** for the reasons explained in the Court's previous Order, § III.D. *See* doc. 100 at 10-11. Defendants also object to a portion of Rodewolt's deposition based on their argument that the citation issued to Carollo is inadmissible. *See* doc. 94 at 2 (referring to argument "more fully set out" in the motion *in limine*). For the reasons explained in § II.B above, that objection is **DENIED**. Their request to include Page 37, lines 10-13 is **GRANTED** as unopposed.[8]

**Deposition of Mike Cobb:** Defendants object to the designation of all portions of the deposition of Mike Cobb on the grounds that defendant Landstar's concession of *respondeat superior* liability renders

---

[8] Since the parties have not filed the deposition transcripts, the Court is unable to evaluate the substance of defendants' assertion that the listed lines be included "under the rule of completeness." However, since plaintiffs have not responded, the Court assumes that they do not object to the inclusion. The Court notes that defendants have filed a "notice of filing" the deposition transcripts, doc. 130, but at the time of drafting, those transcripts were not available.

them irrelevant. *See* doc. 94 at 2-3 (incorporating argument from defendants' objections to plaintiffs' Exhibit 23, among others). For the reasons explained in § II.A above and the Court's prior Order, *see* doc. 100 at 9-10, that objection is **SUSTAINED**.

IV. **CONCLUSION**

Plaintiffs' Motion for Clarification (doc. 110) is **DENIED**, to the extent that it requests a bifurcation of the trial, and any dispute about the admission of specific collateral source evidence not addressed in the Court's prior Order or this Order is **DEFERRED** to the district judge at trial. Plaintiff's Motion for Reconsideration (doc. 111) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED,** this __22nd__ day of June, 2017.

*/s/ G. R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA